The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The validity of two Form 22's regarding the dates plaintiff worked prior to and after March 25, 1996;
2. That plaintiff received short-term disability benefits from May 2, 1996 through July 31, 1996 in the amount of $178.00 per week and long-term disability benefits beginning July 25, 1996 through November 25, 1996 in the amount of $201.77 and long-term disability benefits since November 25, 1996 in the amount of $734.24 per month. As evidenced by the stipulated Affidavit of Ms. Megan Wilson, the defendant-employer contributed fifty percent (50%) towards premium costs of the disability insurance benefits policy.
3. The following records:
 (1) Nine pages of records from Charlotte Orthopaedic Specialists;
 (2) Three pages of records form Metrolina Neurological Associates;
 (3) Nine pages of records from the Pain Care Center;
 (4) Sixteen pages of records from the Orthopaedic Hospital of Charlotte;
 (5) Four pages of records from Rock Hill Orthopaedic Clinic;
(6) Eight pages of records from Dr. Hugh A. Clark;
 (7) Two pages of records from Catawba Rehabilitation Services, Inc.;
 (8) Thirty-two pages of records from Carolina Orthopaedic Surgery Associates; and
 (9) Forty-two pages of records from Piedmont Medical Center.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a 43-year-old married female who on May 31, 1995 became employed by defendant-employer. In March 1996, plaintiff was working on third shift as an ink jet operator. Her immediate supervisor was Davella Hollis. Plaintiff's job duties as an ink jet operator required her to take a disc from a cardboard box, run it through a machine and then place the disc into another box. In carrying out her work duties, plaintiff did not have to engage in any lifting or bending activities as the boxes of discs were placed by other personnel, "expediters", next to the machine which plaintiff was operating. Also, mail trays were not used in the ink jet department as they were only used in the inserting department which was not operating a shift during March 1996.
2. Prior to becoming employed with defendant-employer, plaintiff had a history of treatment for chronic back pain. Plaintiff had undergone surgery for two ruptured discs at the L4-5 and L5-S1 levels in April 1992 which was performed by Dr. McCarthy. Following this surgery, plaintiff continued to complain of bilateral leg pain and experienced difficulty engaging in activities including work activities. In August 1992, Dr. McCarthy recommended that plaintiff either apply for disability or that she undergo a lumbar fusion. However, plaintiff declined surgery at that time and Dr. McCarthy then rated plaintiff with a fifteen percent (15%) permanent partial disability to the back.
3. Plaintiff was also seen by Dr. McQueen, another orthopaedist, in January 1993 who likewise rated plaintiff with a fifteen percent (15%) permanent partial disability to her back based on his examination which revealed that plaintiff was experiencing significant radiculopathy.
4. A functional capacity evaluation of April 1993 performed by Dr. Hugh Clarke, a neurologist, indicated that plaintiff was capable of only engaging in very sedentary to light work activities whereby she would not be required to lift over 15 to 20 pounds on an occasional basis and seven to ten pounds on a frequent basis. Dr. Clark rated plaintiff with a twenty percent (20%) permanent partial disability to her back.
5. By July 1994, plaintiff's condition had deteriorated and Dr. McCarthy, plaintiff's treating orthopaedist, considered plaintiff to be permanently and totally disabled even if she were to undergo fusion surgery. Nevertheless, Dr. McCarthy did refer plaintiff to Dr. Darden in August 1994 for evaluation of possible fusion surgery regarding her complaints of chronic low back pain which radiated into both legs. Dr. Darden advised plaintiff to quit smoking and lose weight. He also rated plaintiff with a fifteen percent (15%) permanent partial disability to her back.
6. After becoming employed by defendant-employer, plaintiff continued experiencing spasms and pain in her back and regularly missed time from work due to her chronic back condition. Defendant-employer attempted to accommodate plaintiff's condition such as providing her with a stool which would allow her the option to sit or stand while performing the ink jet operator's duties. However, due to the chronicity and severity of her pre-existing back condition, plaintiff's back condition would be exacerbated by even the slightest activity whether at work or at home, such as sitting or sneezing.
7. Plaintiff alleges that she sustained an injury by accident arising out of and in the course of her employment with defendant-employer on March 25, 1996 when she experienced a sharp pain radiating down her back into her leg after picking up a "mail tray" weighing between 20 and 30 pounds. However, plaintiff's allegation is not supported by the other evidence of record. As aforementioned, on March 25, 1996, plaintiff was working as an ink jet operator and mail trays are not used in the ink jet department. Furthermore, while plaintiff left work early on March 25, 1996, this was not uncommon as she left work early on several occasions prior to March 25, 1996 due to her chronic back condition. Furthermore, plaintiff's testimony that she "hollered" for her supervisor, Ms. Hollis, and also reported her injury to a coworker, Pat McKeown, was contradicted by the testimony of Ms. Hollis and Ms. McKeown. Additionally, plaintiff had recently sustained a work-related injury in February 1996 when she cut her left thumb and was well aware of the policies of defendant-employer regarding reporting on-the-job injuries and was also aware that defendant-employer would refer plaintiff for medical treatment if a work-related injury were reported. Plaintiff did not request defendant-employer to refer her for medical treatment on March 25, 1996.
8. Plaintiff first sought medical treatment the next day on March 26, 1996 at approximately 10:40 p.m., 20 minutes before she was to report to work with defendant-employer at 11:00 p.m. On this occasion, plaintiff related a history of chronic low back pain since 1990 and indicated a recent increase in her back pain following her return to work where she had to "lift and lean over." Plaintiff did not relate her complaints of back pain to lifting a tray of mail. Plaintiff was next seen by Dr. McCarthy on March 28, 1996. Again, plaintiff failed to relate to Dr. McCarthy any history of onset of back pain resulting from a specific incident, such as "lifting a mail tray." Rather, plaintiff related her symptoms to being switched to another job with defendant-employer. On April 2, 1996 when seen by Dr. Morehart, plaintiff again failed to relate a history of an increase in her back pain attributable to lifting a "mail tray," but rather, Dr. Morehart's records reflect that when plaintiff was asked about how her pain begun, she stated that it occurred "perhaps after picking up a box of mail." It was not until April 26, 1996, one month following her alleged injury, that plaintiff first related a history of injuring her back at work while "lifting some heavy trays."
9. Prior to March 25, 1996, plaintiff had a chronic and disabling back condition for which fusion surgery had been recommended and which greatly restricted her physical activities. Dr. McCarthy had previously, prior to March 1996, considered plaintiff to be permanently and totally disabled and had only released her to return to work activities after being so requested by plaintiff in February 1995 so that plaintiff could receive unemployment insurance benefits. When plaintiff was re-seen by Dr. McCarthy following the alleged March 25, 1996 injury, Dr. McCarthy again placed the same restrictions on plaintiff's activities and again referred her to Dr. Darden for fusion surgery, which was the same treatment recommendation that he had made in 1994.
10. As both the lay and medical evidence of record fail to support plaintiff's contention that she experienced an exacerbation of her back pain as the result of lifting a mail tray at work on or about March 25, 1996, plaintiff has failed to prove that the back problems for which she sought treatment commencing March 26, 1996 resulted from an injury by accident or as the result of a specific traumatic incident of the work assigned occurring during the course of her employment with defendant-employer.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident or as a result of a specific traumatic incident of the work assigned arising out of and in the course of her employment with defendant-employer on or about March 25, 1996. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is, therefore, not entitled to benefits pursuant to the provisions of the Workers' Compensation Act for her injury. N.C. Gen. Stat. § 97-2 et seq.
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim is hereby DENIED.
2. Each side shall pay its own costs.
This the ___ day of February 1998.
 S/ ___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _________________ THOMAS J. BOLCH COMMISSIONER
S/ _________________ CHRISTOPHER SCOTT COMMISSIONER